**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
LOANS ON FINE ART LLC,

                                    Petitioner,

              -against-

IAN S. PECK, ACG ARRANGEMENT
SERVICES LLC, ACG CAPITAL
COMPANY, LLC, MODERN ART
SERVICES, LLC, PATRIOT CREDIT
COMPANY LLC, *and* PEGASUS CREDIT
COMPANY LLC,

                               Respondents.
----------------------------------------------------------------X

IAN S. PECK, ACG ARRANGEMENT
SERVICES LLC, ACG CAPITAL COMPANY,
LLC, MODERN ART SERVICES, LLC,
PATRIOT CREDIT COMPANY LLC, *and*
PEGASUS CREDIT COMPANY LLC,

                          Counter-Petitioners,

              -against-

GARY GREENBERG, ART FUND III LLC,
COLORADO ART HOLDINGS LLC, GB
FUND LLC, LOANS ON FINE ART LLC,
*and* LOTUS INVESTMENT CORP.,

                          Counter-Respondents.
----------------------------------------------------------------X

**REPORT &**
**RECOMMENDATION**

**23-cv-4143 (JHR) (JW)**

**To the Honorable Jennifer H. Rearden, United States District Judge:**

     The above captioned matters were referred to this Court for a Report and

Recommendation on dispositive motions, including Respondents/Counter-

Petitioners Ian S. Peck, ACG Arrangement Services LLC, ACG Capital Company,

LLC, Modern Art Services, LLC, and Pegasus Credit Company LLC (the "Peck Parties") motion to vacate an arbitration award at Dkt. No. 8.[1]  Dkt. No. 29.

On June 8, 2023, counsel for petitioner Loans on Fine Art LLC ("LoFA") filed an amended petition to confirm an arbitration award (see Dkt. No. 6, Ex. 6, the "Arbitration Award") in case number 1:23-cv-4143 (the "LoFA Action").  Dkt. No. 6.  Respondent Patriot Credit Company LLC is a debtor in a bankruptcy proceeding pending in the United States Bankruptcy Court for the District of Delaware.  Dkt. No. 9 at 7[2] n. 1 (citing In re Patriot Credit Company LLC, et al., Bankr. D. Del., Case No. 22-BK-10333).

On July 5, 2023, the Peck Parties filed a petition to vacate the Arbitration Award in case number 1:23-cv-5717 (the "Greenberg Action") naming Loans on Fine Art LLC, Gary Greenberg, Art Fund III LLC, Colorado Art Holdings LLC, GB Fund LLC, and Lotus Investment Corp. as respondents (collectively, the "Greenberg Parties").  See Greenberg Action, Dkt. No. 1.  Following a conference on November 15, 2023, this Court granted a motion to consolidate the Greenberg Action and the LoFA Action as the suits involved the same counsel, overlapping parties, and virtually identical requests to vacate the same Arbitration Award.  Dkt. No. 38.  As a result, the Greenberg Action was closed and consolidated into the first filed LoFA Action.  Id. at 2.  Additionally, this Court granted the Greenberg Parties' request for an order for the Peck Parties to show cause as to

---

[1] Docket references refer to those filed in case number 1:23-cv-4143, unless otherwise indicated.
[2] Page references refer to those generated by ECF, unless otherwise indicated.

why the Court should not issue an order attaching the condominium owned by Respondent/Counter-Petitioner Ian S. Peck, located at 5 East 17th Street, Unit 5, New York, New York, 10003 (the "Property") to ensure satisfaction of a potential judgment in this action.  Id.

For the reasons stated below, this Court recommends that the motion to vacate at Dkt. No. 8 be DENIED, the underlying motion to confirm the Arbitration Award at Dkt. No. 6 be GRANTED, and an order of attachment be issued.

## **BACKGROUND**

On April 5, 2023, arbitrator Kenneth M. Kramer issued a final Arbitration Award in the amount of $7,198,960.30 in favor of the claimant Greenberg Parties. Dkt. No. 6, Ex. 6 at 5.  Arbitrator Kramer previously found that the respondent Peck Parties, *inter alia*, had breached a prior settlement agreement with the Greenberg Parties. Id. at 3.

On January 20, 2021, the Greenberg Parties, the Peck Parties, and Respondent Patriot Credit Company LLC entered into a settlement agreement. Dkt. No. 6, Ex. 1 (the "Agreement").  Prior to entering into the Agreement, the Parties had various disputes concerning their business relations which prompted the desire for settlement.  Dkt. No. 6, Ex. 4 at 3.  The Agreement contained a dispute resolution provision whereby the Parties agreed to resolve disputes related to the Agreement before a single arbitrator selected through and under the rules of JAMS in New York

County, New York.  Agreement § 13.  The Agreement required the Peck Parties to arrange the evaluation of a painting (the "Painting") by Andrea del Sarto entitled *Ottaviano de' Medici* dated around 1525.  See Agreement § 1(a)(i).  The evaluation of the Painting was to be completed by a well-known art auction house or comparable firm by February 12, 2021, and was to be sent to the Greenberg Parties thereafter. Id.

The Agreement further provided that the Painting be "delivered to the Auctioneer and auctioned or sold by private sale on or before May 31, 2021[.]" Agreement § 1(a)(i).  The Greenberg Parties were to be paid proceeds under an agreed upon formula, and, if the Painting was not sold, the Greenberg Parties had the right to full, unencumbered title of the Painting.  Id. § 1.

The Greenberg Parties initiated arbitration seeking emergency relief under the Agreement, and on April 30, 2021, the Hon. James C. Francis IV (Ret.) was appointed as emergency arbitrator.  Dkt. No. 6, Ex. 2.  Arbitrator Francis concluded that the Greenberg Parties were likely to prevail on the breach of contract claim and awarded preliminary injunctive relief.  Dkt. No. 6 at 4.

On June 24, 2021, arbitrator Kenneth M. Kramer Esq. was appointed.  Dkt. No. 6, Ex. 3.  On July 1, 2022, arbitrator Kramer issued a summary disposition decision finding that the Peck Parties had breached the Agreement.  Dkt. No. 6, Ex. 4.  The decision found that the Peck Parties made false representations and never owned or controlled the Painting, nor was the Painting ever presented for evaluation.

4

<u>Id.</u> at 6.  Further, in the decision, arbitrator Kramer rejected and dismissed each of the defenses and counterclaims raised by the Peck Parties.  <u>Id.</u> at 13-14.

On February 20, 2023, arbitrator Kramer issued a decision regarding damages finding that the value of the Painting was $15 million.  Dkt. No. 6, Ex. 5 at 13.  In reaching this decision, arbitrator Kramer considered (i) a $15 million valuation by Greenberg Parties' witness Dr. Timothy Hunter (the "2021 Appraisal"), (ii) respondent Ian S. Peck's testimony that the Painting could be worth $10-15 million or sell for up to $25 million, (iii) a waterfall provision in the Agreement which posited values up to $30 million, (iv) a 2019 Winston Group valuation of $1.5 million (the "2019 Appraisal"), and (v) the Sotheby's sale of the Painting at $2.198 million.  <u>Id.</u> at 10.  Ultimately, arbitrator Kramer awarded contractual damages in the amount of $6,021,100.00, prejudgment interest in the amount of $1,131,303.30, and $46,557.00 in JAMS fees for a total award of $7,198,960.30.  Dkt. No. 6, Ex. 6 at 5.

## LEGAL STANDARD

The confirmation of an arbitration award is typically a "summary proceeding" where the Court "must grant the award unless the award is vacated, modified, or corrected."  <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006) (quoting other sources and internal quotation marks omitted).  District courts grant arbitration decisions substantial deference and motions to vacate are "not an occasion for *de novo* review of an arbitral award."  <u>Wallace v. Buttar</u>, 378 F.3d 182,189 (2d Cir. 2004).  "A party petitioning a federal court to vacate an arbitral award bears the

heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Id. (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003)).

Under the Federal Arbitration Act ("FAA"), a district court may vacate an arbitration award:

> "(1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

Additionally, "a district court may vacate arbitration awards when the arbitrators acted in manifest disregard of the law." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997). "The 'manifest disregard' test requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" Id. (quoting Siegel v. Titan Indus. Corp., 779 F.2d 891, 892 (2d Cir.1985)). The party moving to vacate the award bears the burden of proving that the arbitrators acted in manifest disregard of the law. Id.

Under the Federal Rules of Civil Procedure 64(a), remedies are available in federal court that are available under the applicable state law "provid[ing] for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P.

64(a). Attachment is available as a specific remedy under Fed. R. Civ. P. 64(b).
Pursuant to New York law, to obtain an order of attachment the party seeking
attachment bears the burden of demonstrating that "(1) there is a cause of action; (2)
it is probable that the petitioner in the cause of action will succeed on the merits; (3)
a ground for attachment under N. Y. C.P.L.R. 6201 exists; and (4) the amount
demanded from the respondent exceeds all counterclaims known to the petitioner."
Mishcon de Reya New York LLP v. Grail Semiconductor, Inc., No. 11 CIV. 04971
(RJH), 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011) (citing N.Y. C.P.L.R.
6212(a)).

## **DISCUSSION**

The Peck Parties move to vacate the Arbitration Award alleging that vacatur
is proper pursuant to § 10 of the FAA because arbitrator Kramer refused to "allow
discovery and consider evidence concerning the concealment of the 2019 Appraisal by
Greenberg and Winston Art advisors and concoction of the 2021 Appraisal." Dkt. No.
9 at 23. Specifically, the Peck Parties cite to 9 U.S.C.A. § 10(a)(3), which states that
an arbitration award may be vacated "where the Arbitrators were guilty of
misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in
***refusing to hear evidence pertinent and material to the controversy***; or of any
other misbehavior by which the rights of any party have been prejudiced." Id.
(emphasis added). The Peck Parties also rely on 9 U.S.C.A. § 10(a)(1) providing for
vacatur, "where the award was procured by corruption, fraud, or undue means." Id.

7

Secondly, the Peck Parties argue that arbitrator Kramer acted in manifest disregard of the law by ignoring (i) a merger clause in the Agreement, (ii) black-letter law that the Greenberg Parties bore the burden of proving a specific amount of damages rather than a damages range, and (iii) black-letter law that breach of contract damages could not put the Greenberg Parties in a better position than performance of the contract in light of the waterfall provision in the Agreement. Dkt. No. 9 at 24-30.

The Greenberg Parties counter that the arbitrator's limitations on discovery are not grounds to vacate the Arbitration Award, and the arbitrator did not disregard controlling law with respect to the Agreement's merger clause, the required proof of damages, or expectation damages. Dkt. No. 14. Additionally, the Greenberg Parties argue that they satisfy the requirements for an order of attachment under N.Y. C.P.L.R. §§ 6201 and 6212 to ensure satisfaction of a potential judgment in this action. Dkt. No. 25. The Peck Parties oppose the attachment request by stating that the conditions of N.Y. C.P.L.R. §§ 6201 and 6212 have not been met. Dkt. No. 42. This Court will address each of these issues in turn.

## A. <u>Confirming the Arbitration Award</u>

Unless the Court finds grounds for vacatur of the Arbitration Award, the Award should be confirmed. <u>Wallace v. Buttar</u>, 378 F.3d at 189. Here, the Peck Parties have not met the high burden of establishing that the Arbitration Award should be vacated. Therefore, this Court recommends that the motion to vacate the

Arbitration Award be DENIED and the motion to confirm the Arbitration Award be GRANTED.

### 1.  Discovery Regarding the 2019 Appraisal and FAA Section 10(a)

The Peck Parties argue the arbitrator failed to allow discovery and consider evidence concerning the concealing of the 2019 Appraisal of the Painting, warranting vacatur on statutory grounds.  Dkt. No. 9 at 23.  Peck Parties allege that witness Dr. Hunter failed to disclose a prior 2019 Appraisal of the Painting, which valued the Painting at $1.5 million (less than the 2021 Appraisal value of $15 million), in violation of the Uniform Standards of Professional Appraisal Practice ("USPAP") ethics rules.  Id. at 23-25.  During the arbitration process, the Peck Parties sought discovery from the Winston Art Group regarding the 2019 Appraisal and asked to depose Elizabeth and Geza von Habsburg, who co-authored the 2019 Appraisal with Dr. Hunter.  Id.  at 8, 24.

Arbitrator Kramer denied the Peck Parties' request for discovery regarding the 2019 Appraisal explaining that, "[t]he discovery deadlines had long since past [sic] and no good cause was demonstrated to reopen discovery[.]" Dkt. No. 15, Ex. 7 at 2. The arbitrator denied the request for subpoenas for the von Habsburgs stating that the requested testimony "would unduly prolong the hearing and would sufficiently be covered by cross examination" of Dr. Hunter.  Id.

Upon review, it cannot be said that the arbitrator was guilty of any misconduct or misbehavior warranting vacatur of the Arbitration Award.  The cases cited by the

Peck Parties are not persuasive with respect to vacating arbitration in this action based on the arbitrator's decision to not allow further discovery or leave to take depositions.  Unlike in Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 16-18 (2d Cir. 1997), where the witness who the arbitrator did not allow to testify was the only witness who could rebut testimony in the action; here, as the arbitrator noted, the cross-examination of the expert Dr. Hunter would get to the same information.  Dkt. No. 15, Ex. 7 at 2.

Additionally, Teamsters, Chauffeurs, Warehousemen & Helpers, Loc. Union No. 506 v. E.D. Clapp Corp., 551 F. Supp. 570, 577-78 (N.D.N.Y. 1982), aff'd sub nom. Teamsters, Chauffers v. Ed Clapp Corp., 742 F.2d 1441 (2d Cir. 1983) cited by the Peck Parties is distinguishable because in that action the arbitrator refused to hear evidence "pertinent and material to the controversy" and the hearing "ended abruptly due to disturbances from one or both of the parties."  Conversely, in the present action, arbitrator Kramer allowed the Peck Parties a full and fair opportunity to investigate the 2019 Appraisal by allowing them to cross-examine Dr. Hunter. Arbitrator Kramer noted in his decision on damages, "[t]he facts concerning the 2019 [A]ppraisal were fully explored and there was and is no reason to seek duplicative testimony…" Dkt. No. 6, Ex. 5 at 8.

This Court agrees with the arbitrator and defers to his more fulsome view of the case.  "It is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence."  Areca, Inc. v. Oppenheimer & Co., 960 F. Supp. 52, 55

10

(S.D.N.Y. 1997) (citing other sources). Further, "arbitrators need not hear cumulative or irrelevant evidence." Id.

Additionally, the arbitrator made a credibility determination about the testimony of Dr. Hunter and found him to be a "compelling witness." Dkt. No. 6, Ex. 5 at 8. The arbitrator also noted that the Peck Parties' argument that "the 2019 Appraisal was hidden as part of a fraud makes no sense." Id. at 7. At the conference in this matter, the Peck Parties largely reiterated the fraud argument before this Court. See Transcript, Dkt. No. 40 at 7-12. This Court was not persuaded by the arguments and for that reason did not grant the Peck Parties leave to take further discovery or depose further witnesses.

The record is clear that the Peck Parties were able to interrogate the 2019 Appraisal at the arbitration stage, and the arbitrator simply did not find their arguments to be credible. The arbitrator was satisfied by the testimony of Dr. Hunter and did not believe further discovery or depositions were necessary with respect to the 2019 Appraisal. Dkt. No. 6, Ex. 5 at 8. These credibility determinations are not for this Court to subsume and do not meet the high bar for vacatur of an arbitral award. See GFI Sec. LLC v. Labandeira, No. 01 CIV. 00793 (JFK), 2002 WL 460059, at *4 (S.D.N.Y. Mar. 26, 2002) ("the [District] court may not re-weigh the evidence or question the credibility findings of the arbitrator."). All the arguments the Peck Parties made were considered and rejected by the arbitrator. Therefore, this Court finds no reason to vacate the Arbitration Award under Section 10(a) of the FAA.

11

### 2. Manifest Disregard of the Law

This Court is similarly not persuaded that the arbitrator acted in manifest disregard of the law in his interpretation of the merger clause, the waterfall provision, or the damages calculation.

#### a. *Merger Clause in the Agreement*

The Peck Parties allege that the arbitrator disregarded the law by ignoring the merger clause in the Agreement and validating the Winston Art Group's assumption that the Painting was in "excellent" condition. Dkt. No. 9 at 25-27. Section 16 of the Agreement reads: "[t]his Agreement constitutes the entire agreement and understanding of the Parties . . . and supersedes all prior agreements and understandings, both written and oral . . ." Agreement at 9. The Peck Parties argue that the 2019 Appraisal stated that the Painting was not in good condition, so its value was $1.5 million. Dkt. No. 9 at 17-18. The Peck Parties reason that because the merger clause supersedes all representations regarding the Painting, Dr. Hunter was not entitled to assume that the Painting was in excellent condition and worth $15 million as he did in the 2021 Appraisal. Id. at 25-27. Therefore, the Peck Parties contend that the arbitrator committed an error of law by relying on the 2021 Appraisal based on the Painting's allegedly excellent condition because his interpretation invalidates the merger clause. Id.

Vacating an arbitration award for manifest disregard of law is a "very limited review." Baker Hughes Energy Servs. LLC v. Int'l Eng'g & Constr. S.A., No. 21-cv-

1961 (JMF), 2021 WL 5331450, at *5 (S.D.N.Y. Nov. 16, 2021) (quoting another source). The Court will only vacate an award on such grounds where it finds:

> "(1) the law was clear, and in fact explicitly applicable to the matter before the arbitrators; (2) the law was in fact improperly applied, leading to an erroneous outcome; and (3) the arbitrator must have known of [the law's] existence, and its applicability to the problem before him."

Id. (internal quotation marks omitted). The party seeking to vacate an arbitral award bears the burden of proving these elements. Id. "If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Westerbeke Corp. v. Daihatsu Motor Co., 304 F. 200, 222 (2d Cir. 2002).

This Court is not persuaded that the Peck Parties have met the burden of demonstrating that the merger clause was improperly applied. The arbitrator clearly exercised his discretion in interpreting the Agreement before him and found that the Painting was warranted to have been in good condition. Dkt. No. 6, Ex. 5 at 4-5. In the decision on damages, the arbitrator notes that the Painting's good condition could be inferred from the Agreement, as well as extrinsic documents offered by the Greenberg Parties showing prior representations of the Painting's condition, and the credibility of Dr. Hunter's testimony showing he relied on representations. Id. at 4-6, 11. Even in the absence of any extrinsic evidence, the arbitrator noted that, "Dr. Hunter's assumptions about condition and authenticity were dictated by the representations made by the Respondent's in the Settlement Agreement." Dkt. No. 6, Ex. 5 at 10, n. 7.

Courts may consider extrinsic evidence regarding merger clauses to interpret ambiguities in fully integrated contracts. See In re KG Winddown, LLC, 632 B.R. 448, 472 (Bankr. S.D.N.Y. 2021) ("extrinsic evidence may be considered to interpret ambiguities in a fully integrated contract, as long as the interpretation does not add to or vary the terms of the contract.").

In the decision on damages, Arbitrator Kramer found that, "[i]t would be totally unfair to find that the [P]ainting was not in good condition when Respondents represented that it was[,] and by lying about whether they owned or had access to the painting [made] it impossible for Dr. Hunter to examine the [P]ainting." Dkt. No. 6, Ex. 5 at 9. Further, arbitrator Kramer noted that, "[d]oubts [regarding contract damages] are generally resolved against the party in breach." Id. (quoting In Process Am. Inc. v. Cynergy Holdings LLC, 839 F.3d 125, 141 (2d Cir. 2016)). The Peck Parties do not note any provision in the Agreement specifically contrary to the findings of the arbitrator and it cannot be said that the interpretation of the arbitrator with respect to damages was clearly contrary to law.

 Therefore, this Court is not persuaded that the arbitrator erred in his determination of damages considering the merger clause.

### b. *Specific Damages*

The Peck Parties argue that the arbitrator manifestly disregarded the law by awarding damages based upon mere damage range testimony. Dkt. No. 9 at 27-28. Specifically, the Peck Parties state, "[i]n the absence of Dr. Hunter's discredited $15

million valuation, there simply was no credible testimony or evidence . . . to support any particular amount of alleged damages." <u>Id.</u> at 28.  The Greenberg Parties counter that arbitrator Kramer clearly credited Dr. Hunter's testimony and interpreted it to be that the value of the Painting was $15 million.  Dkt. No. 14 at 26.  This Court agrees.

Arbitrator Kramer "observed Dr. Hunter's testimony and found that he was a compelling witness."  Dkt. No. 6, Ex. 5, at 8.  Further, the arbitrator concluded that "Dr. Hunter's valuation of $15 million appears to be the most accurate estimate of value."  <u>Id.</u> at 10.  This is a clear indication that the arbitrator relied on a specific damages amount rather than a range as the Peck Parties argue.

While the Peck Parties state that Dr. Hunter's $15 million valuation has been "discredited," Dkt. No. 9 at 28, this determination is not properly before the Court.  As previously stated, "the court may not re-weigh the evidence or question the credibility findings of the arbitrator."  <u>GFI Sec. LLC v. Labandeira</u>, 2002 WL 460059, at *4.  The Court again defers to the arbitrator's judgment that Dr. Hunter's testimony was credible.  The Peck Parties have not met their burden of proving that the arbitrator manifestly disregarded the law by relying on Dr. Hunter's $15 million valuation of the Painting.

### c. *The Waterfall Provision*

The Peck Parties assert that the arbitrator ignored black-letter law that breach of contract damages cannot put the claimant in a better position than if the contract

had been performed, and argue that the waterfall provision in Section 1(c) of the Agreement provides that the first 10% of the sales price go to the Peck Parties. Dkt. No. 9 at 29-31. In his decision, the arbitrator found that "no [10%] deduction should be made for 'sales expenses.'" Dkt. No. 6, Ex. 5 at 11. The Peck Parties state that the Court should vacate the Arbitration Award because it fails to deduct the first 10% off the hypothetical sales price of the Painting. Dkt. No. 9 at 30.

Again, "[where] the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d at 222. "The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law." Id. at 214. "The arbitrator's rationale for an award need not be explained . . . if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair & Co. v. Gottdiener, 462 F.3d at 110 (quoting another source and internal quotation marks omitted).

The Greenberg Parties argue that one justification for the arbitrator declining to apply the 10% is that the discount would allow the breaching party to benefit from their wrongdoing. See Transcript Dkt. No. 40 at 29-30. The Peck Parties' "failure to sell the [Painting] meant that they incurred no 'sales expenses,' and therefore had no need for reimbursement of such expenses." Dkt. No. 14 at 28. Here, while the arbitrator did not lay out his rationale for declining to apply the 10% reimbursement,

the justification proffered by the Greenberg Parties makes sense based on the facts of this action. It cannot be said that the arbitrator acted in manifest disregard of the law by declining to reimburse the Peck Parties for expenses that they did not expend.

## B. Attachment

The Greenberg Parties argue that they are entitled to an order of attachment under Fed. R. Civ. P. 64 and N.Y. C.P.L.R. §§ 6201 and 6212. Dkt. No. 25. The subject Property has been appointed a referee to determine the value of the Property and coordinate its foreclosure sale. Id. at 22 (citing Wilmington Savings Fund Society, FSB, d/b/a/ Christiana Trust, Not Individually but as Trustee for Pretium Mortgage Acquisition Trust v. Ian Peck, et al., Index No. 850022/2020 (N.Y. Sup. Ct. July 18, 2023)). The Greenberg Parties seek the order of attachment to "prevent the transfer of [the Property] and protect surplus proceeds from [the] foreclosure sale." Id. at 7.

To obtain such an order, the Greenberg Parties must meet the statutory requirements and show "(1) there is a cause of action; (2) it is probable that the petitioner in the cause of action will succeed on the merits; (3) a ground for attachment under N.Y. C.P.L.R. 6201 exists; and (4) the amount demanded from the respondent exceeds all counterclaims known to the petitioner." Mishcon de Reya New York LLP, 2011 WL 6957595, at *3 (citing N.Y. C.P.L.R. 6212(a)). This is a "high burden" and in New York "attachment statutes are construed strictly against those who seek to invoke the remedy." Serenity Alpha, LLC v. Northway Mining, LLC, 531 F. Supp. 3d 512, 519 (N.D.N.Y. 2021) (quoting another source). Attachment is a

17

discretionary remedy, and "[i]t is well recognized that the court has discretion to deny an order of attachment, even where the plaintiff may have shown the statutory requirements for the provisional remedy." Dafeng Hengwei Textile Co. v. Aceco Indus. & Com. Corp., 54 F. Supp. 3d 279, 286 (E.D.N.Y. 2014) (quoting Trigo Hnos., Inc. v. Premium Wholesale Groceries, Inc., 424 F. Supp. 1125, 1133 (S.D.N.Y. 1976)).

Despite this high bar, this Court believes that the Greenberg Parties have satisfied the statutory requirements for attachment and the subject Property should be attached to ensure satisfaction of a likely judgment in this action. As detailed herein, this Court believes that the Greenberg Parties are very likely to prevail in this action, see supra Part A, and this Court is particularly concerned by the allegation that Mr. Peck has no bank accounts from which the Greenberg Parties could seek satisfaction of a judgment. See Dkt. No. 25 at 22; Dkt. No. 27, Ex. 3. Further, as the Property is in foreclosure proceedings, if it is sold and the Property is not attached, then the Greenberg Parties will have no claim to any surplus proceeds from the sale. Dkt. No. 25 at 22-23.

## 1. Cause of Action

The Parties do not dispute that there is a cause of action pursuant to N.Y. C.P.L.R. 6212(a). See Dkt. Nos. 25, 42. "It is undisputed that there is a cause of action in this case (namely, a proceeding to confirm the Award)[.]" 245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd., No. 22-cv-5136 (JGK), 2022 WL 2916577, at *2 (S.D.N.Y.

July 25, 2022).  The first element of attachment is clearly satisfied by the instant motion to confirm the Arbitration Award.

### 2. Likelihood of Success

For the reasons stated <u>supra</u> Part A, this Court believes that it is probable that the Greenberg Parties will succeed on the merits in confirming the Arbitration Award. As analyzed previously, the confirmation of an arbitration award is typically a "summary proceeding" where the Court "must grant the award unless the award is vacated, modified, or corrected." <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d at 110 (quoting other sources and internal quotation marks omitted).  The Peck Parties largely rely on their prior arguments that the Arbitration Award should be vacated because of the alleged violations under §§ 10(a)(1) and 10(a)(3) of the FAA and the arbitrator's alleged errors of law, Dkt. No. 42 at 21-22, and this Court has analyzed <u>supra</u> Part A, that it does not find these arguments to be persuasive.  Therefore, the second element of attachment is satisfied.

### 3. A Ground for Attachment under N.Y. C.P.L.R. 6201

The Greenberg Parties argue that "[Mr.] Peck's repeated and persistent fraudulent efforts to avoid payment to creditors, including LoFA, satisfies CPLR 6201(3)[.]" Dkt. No. 25 at 19.  N.Y. C.P.L.R. 6201(3) states that a ground for attachment exists where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the

19

state or is about to do any of these acts."  In other words, to establish attachment under this standard, the Greenberg Parties must show "**both** that the defendant (1) has *assigned, disposed of, encumbered*, or secreted property, or removed it from the state, *or is about to do any of these acts*; and (2) has acted or will act with the *intent to defraud creditors* or to *frustrate the enforcement of a judgment* that might be rendered in plaintiff's favor." DLJ Mortg. Cap., Inc. v. Kontogiannis, 594 F. Supp. 2d 308, 318-19 (E.D.N.Y. 2009) (emphasis added).

In support of prong one, the Greenberg Parties note the impending foreclosure proceedings and contend that "[u]nless the Court enters an order of attachment, [they] will be unable to assert a claim to any surplus proceeds stemming from the sale of the [Property]."  Dkt. No. 25 at 22-23.  Further, they argue, "absent an attachment order, [Mr.] Peck is likely to transfer title to an existing or to-be-formed shell entity of his, placing it out of creditors' reach." Id. at 23. To demonstrate this likelihood, the Greenberg Parties allege that Mr. Peck fraudulently transferred his Hamptons home to a "shell company," Stubbs Holdings LLC. Id. at 12, 21-22; Dkt. No. 27 ¶ 60, Ex. 14.  Finally, the Greenberg Parties argue that the refinancing Mr. Peck seeks will further encumber the Property satisfying N.Y. C.P.L.R. 6201(3). Dkt. No. 46 at 5.

The Peck Parties counter that the Greenberg Parties have not shown that Mr. Peck has assigned of or disposed of the Property beyond "mere suspicion that Mr. Peck is about to" do so.  Dkt. No. 42 at 15.  Further, the Peck Parties argue that Mr.

Peck is not at imminent risk of losing the Property with "at least a year until the proceedings could reach the point of a foreclosure auction." Id. at 23.

With respect to prong two, the Greenberg Parties argue that courts regularly consider "badges of fraud" and circumstantial evidence because there is rarely direct proof of fraudulent intent. Dkt. No. 25 at 20 (citing BFP v. Resolution Trust Corp., 511 U.S. 531, 540-41 (1994)). Also, the Greenberg Parties cite to the proposition that "the overwhelming weight of authority in New York State courts and courts in this District favors the view that § 6201(3) may be satisfied where the plaintiff merely demonstrates past fraudulent transfers by the defendant." Id. (citing New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., No. 07 CIV. 8008 (RJS), 2008 WL 2115225, at *6 (S.D.N.Y. May 16, 2008)). The Greenberg Parties note more than 20 lawsuits involving Mr. Peck and his affiliated companies and the alleged failure of Mr. Peck to pay creditors dating back to 2007. Id. at 10-16. Additionally, the Greenberg Parties reiterate the findings of the Peck Parties' fraud by the arbitrator in the instant action. Id. at 7.

The Peck Parties dispute the characterization of the suits the Greenberg Parties rely upon and state that many judgements were not individually against Mr. Peck. Dkt. No. 42 at 18-20.

Considering the totality of the circumstances presented, this Court believes that Mr. Peck's own admission shows a desire to, at the very least, encumber the property through refinancing. Dkt. No. 42 at 22-23. The Court also has concerns

about the impending auction and sale of the Property and the bar on the Greenberg Parties' ability to recover if no order of attachment is entered. In reaching a determination about N.Y. C.P.L.R. 6201(3), courts have considered "the general chronology of the events and transactions under inquiry." New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., 2008 WL 2115225, at *6.

Here, the Greenberg Parties have credibly articulated a troubling history with the Property, noting that by Mr. Peck's admission that he has no savings accounts and closed his checking account in August 2020, so he has no account from which to pay for maintenance of the Property. Dkt. No. 25 at 22; Dkt. No. 27, Ex. 3. Further, rental income from the Property allegedly goes through Pegasus Credit Company (a Respondent in this action) and is directly paid to Mr. Peck's wife, keeping proceeds out of reach of creditors. Dkt. No. 25 at 22; Dkt. No. 27 ¶ 47.

Finally, the instant dispute raises a specter of fraudulent intent. The Parties had a preexisting business dispute and reached a settlement Agreement based on the Peck Parties' representation that they owned the Painting. Dkt. No. 6, Ex. 4 at 3. However, despite their representations, the arbitrator noted that the Peck Parties had been "lying about whether they owned or had access to the [P]ainting making it impossible for Dr. Hunter to examine [it]." Dkt. No. 6, Ex. 5 at 9. With respect to Mr. Peck, the arbitrator stated that "[n]ever once in [the] constant communications did Mr. Peck… tell [the Greenberg Parties] that they did not own or have access to the [P]ainting." Dkt. No. 6, Ex. 4 at 6. Further, the arbitrator concluded that "it is hard

to imagine a case where [the Peck Parties'] unclean hands could be more obvious." Id.  This sequence of events, coupled with Mr. Peck's desire to refinance the Property with new lenders, is sufficient to satisfy N.Y. C.P.L.R. 6201(3).

### 4. Counterclaims

The Greenberg Parties argue the final prong for attachment is met because no counterclaims survived arbitration.  Dkt. No. 25 at 23-24.  The Peck Parties do not dispute that the counterclaims have been dismissed, although they allege the arbitrator "wrongly" dismissed them.  Dkt. No. 42 at 11.  Given that the Arbitration Award is $7,198,960.30 and the Peck Parties have no surviving counterclaims, the final prong is satisfied.

### 5. Peck Parties' Arguments

The Peck Parties argue that the Court should not issue an order of attachment because it will prevent Mr. Peck from reinstating or refinancing the Property potentially harming his wife and children.  Dkt. No. 42 at 22-23.  The Peck Parties cite to Dafeng Hengwei Textile Co., 54 F. Supp. 3d 279 at 286, to argue that a court has found attachment to be oppressive where the property was owned by third parties.  Id.  The Peck Parties further cite to Interpetrol Bermuda Ltd. v. Trinidad and Tobago Oil Co., 513 N.Y.S.2d 598 (N.Y. Sup. Ct. 1987) alleging a court vacated attachment because of "demonstrated hardships" resulting in financial losses.  Id. at 23.

The Greenberg Parties counter that <u>Dafeng Hengwei Textile Co.</u> is distinguishable because in that case the property sought to be attached was owned by a non-party partnership, while here, the Greenberg Parties allege the Property funds are paid to a respondent in this action. Dkt. No. 46 at 13. The Greenberg Parties further argue the <u>Interpetrol Bermuda Ltd.</u> court did not assess ability to attach under N.Y. C.P.L.R. 6201 and the attached-property holder was an entity wholly owned by a sovereign nation and an "ongoing business entity, capable of satisfying any judgment which may be entered against it." <u>Id.</u>

On balance, this Court does not believe that attachment of the Property constitutes a "hardship." Considering the merits of success in confirming the Arbitration Award, the proximity of the Property at issue to Parties in this action, and the lack of other receivable assets, this Court believes that attachment is proper above the objections of the Peck Parties.

### 6. Undertaking

The Peck Parties seek that the Court require Greenberg to post an undertaking of at least $12 million, the alleged value of the Property today. Dkt. No. 42 at 24. The Peck Parties argue that the alleged property value is an appropriate undertaking because the amount should be "suitable to the values of the attached property and/or potential damages" and the undertaking must be "rationally related to the potential damages in the event the injunction is found to have been unwarranted." <u>Id.</u> (citing, *inter alia*, <u>Med. Bldgs. Assocs., Inc. v. Abner Properties Co.</u>, 103 A.D.3d 488, 488, 959

N.Y.S.2d 476, 476–77 (1ˢᵗ Dep't 2013) and <u>JSC VTB Bank, etc. v. Mavlyanov</u>, 154 A.D.3d 560, 563, 63 N.Y.S.3d 40, 44 (1st Dep't 2017)).

Conversely, the Greenberg Parties argue that the statutory minimum undertaking of $500 is sufficient. Dkt. No. 46 at 14. In support, they cite that because attachment would be subordinate to previously recorded liens, attachment would not impact the foreclosure proceedings. <u>Id.</u> at 13. Additionally, the Greenberg Parties note that Mr. Peck maintains that he has no intention of selling the Property and foreclosure proceedings are at least six months away, so the chances of imminent damages are negligible. <u>Id.</u> at 14. Finally, in <u>Yong Xiong He v. China New Star Rest., Inc.</u>, No. 19cv5907(PKC)(CLP), 2020 WL 6202423, at *16 (E.D.N.Y. Oct. 22, 2020), the court found that a $500 minimum undertaking was sufficient given the nature of residential properties where "Defendants have lived and continue to live in [the property], [and] there is minimal need for security to cover costs and damages" during the pendency of the action. <u>Id.</u>

Pursuant to N.Y. C.P.L.R. 6212(b), the Court enters an undertaking of not less than $500 for petitioner to pay costs and damages including reasonable attorney's fees if "the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property." Upon review, given the nature of this action, this Court believes that the statutory minimum of $500 is sufficient. As previously analyzed, this Court believes that it is highly unlikely that the Peck Parties will recover judgment, and resolution of this action is imminent.

Additionally, like in <u>Yong Xiong He v. China New Star Rest., Inc.</u>, 2020 WL 6202423, at *16, this is a residential property where there is a minimal need for security to cover costs and damages. Therefore, this Court recommends that the Greenberg Parties' requested undertaking of $500 be imposed.

## RECOMMENDATION

For the reasons stated above, this Court recommends that the motion to vacate at Dkt. No. 8 be DENIED, the underlying motion to confirm the Arbitration Award at Dkt. No. 6 be GRANTED, and an order of attachment be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF. Any requests for an extension of time for filing objections must be directed to Judge Rearden. **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cephas v. Nash</u>, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:    New York, New York
          February 5, 2024

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge