UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOANS ON FINE ART LLC,

Petitioner,

-against-

IAN S. PECK, ACG ARRANGEMENT SERVICES LLC,
ACG CAPITAL COMPANY, LLC, MODERN ART
SERVICES, LLC, PATRIOT CREDIT COMPANY LLC,
AND PEGASUS CREDIT COMPANY LLC,

Respondents.

Civil Action No. 23-CV-4143 (JHR)

---

IAN S. PECK, ACG ARRANGEMENT SERVICES LLC,
ACG CAPITAL COMPANY, LLC, MODERN ART
SERVICES, LLC AND PEGASUS CREDIT COMPANY
LLC,

Petitioners,

-against-

GARY GREENBERG, ART FUND III LLC, COLORADO
ART HOLDINGS LLC, GB FUND LLC, LOANS ON FINE
ART LLC, AND LOTUS INVESTMENT CORP.,

Respondents.

Civil Action No. 23-CV-5717

---

I, ETHAN KOBRE, declare under penalty of perjury that the following is true and correct, to my personal knowledge:

1.     I am counsel to Ian Peck in the matters *Board of Managers of 5 East 17th Street Condominium v Peck*, Supreme Court, New York County, Index No. 151186/2019 and *Wilmington*

*Savings Fund Society v. Ian Peck, et al.*, Supreme Court, New York County, Index No. 850022/2020, and am familiar with the facts set forth herein. I submit this declaration in opposition to the motion by Loans on Fine Art LLC for attachment of Mr. Peck's apartment at 5 East 17th Street, 5th Floor, New York, NY 10003 (the "Apartment").

### A.  The Condominium Dispute

2.      Since 2019, Mr. Peck has been embroiled in a dispute with The Board of Managers of the 5 East 17th Street Condominium (the "Condominium") concerning Mr. Peck's alleged failure to pay common charges and assessments associated with his ownership of the Apartment.

3.      Mr. Peck, in turn, alleged that the Condominium received an undisclosed tax credit on his behalf—a credit that hadn't been applied to his common charge account and that must be applied as a setoff to any monies claimed to be owed to the Condominium.

4.      In 2022, Mr. Peck paid under protest a small judgment, in the amount of $133,116.02, entered in favor of the Condominium and countersued for breach of fiduciary duty.

5.      The Condominium has continued to pursue meritless claims of no more than $400,000, to which Mr. Peck has asserted substantially greater counterclaims. *See* **Exhibit 1**, hereto.

6.      Due to a backlog of cases before the trial judge, the dispute is not expected to go to trial for perhaps a year or longer.

7.      Mr. Peck does not expect to incur any substantial liability, and in fact stands to recoup the amounts he paid to satisfy the small judgment in favor of the Condominium, along with other damages.

8.      The Condominium action does not pose any threat to Mr. Peck's continued ownership of the Apartment.

### B. The Wilmington Foreclosure Action

9.      On February 5, 2020, Wilmington Savings Fund Society, FSB ("Wilmington"), Mr. Peck's lender in connection with the Apartment, commenced an action for foreclosure against the Apartment in the Supreme Court of the State of New York, on grounds of non-payment of the note. *See* **Exhibit 2**, hereto. Mr. Peck answered the complaint on July 9, 2020, asserting one counterclaim. *See* **Exhibit 3**, hereto.

10.      Thereafter, the matter was referred to a foreclosure settlement conference. On December 1, 2022, Wilmington filed a motion for summary judgment. *See* **Exhibit 4**, hereto. On March 14, 2023, the court granted Wilmington's motion for summary judgment. After vacating its order, the court again granted Wilmington's motion for summary judgment on July 19, 2023. *See* **Exhibit 5**, hereto.

11.      In October 2023, a referee compiled a proposed report, to which Mr. Peck may object by December 15, 2023. The next conference in the matter is scheduled to take place on March 6, 2024. *See* **Exhibit 6**, hereto.

12.      To date, the court has not adopted the referee's report and has not heard, let alone granted, a motion for a judgment of foreclosure and sale.

13.      In the ordinary course, a judgment of foreclosure in a matter of this kind would not be expected for at least six months, and a foreclosure sale would not be expected for at least another six months after that. Thus, there is no risk of a foreclosure sale taking place for at least another year from today.

14.      In the meantime, Mr. Peck has the right to reinstate the mortgage or to refinance the loan up until any foreclosure sale. Indeed, despite the foreclosure, Wilmington recently confirmed that it is willing to reinstate the mortgage upon a payment of $1,157,616.38. *See* **Exhibit**

**7**, hereto. Wilmington also provided a payoff quote for the loan in the amount of $3,744,240.60. *See* **Exhibit 8**, hereto.

15.     If Mr. Peck is able to reinstate the mortgage or refinance the mortgage, which is his intention, the foreclosure action would be resolved and dismissed.

Executed on November 22, 2023

_____
Ethan Kobre

4