**Bluestone**

> Judgment Debtors are ordered to file a response to this letter, no more than 5 pages, by **5:00 PM today on October 22, 2025**. As part of their response, Judgment Debtors are directed to confirm whether they asserted to Judgment Creditors that "they would not comply with the Court's order absent entry of a protective order." SO ORDERED.
>
> *Jennifer E. Willis*
> JENNIFER E. WILLIS
> United States Magistrate Judge
> October 22, 2025

**Via ECF and Email**

October 21, 2025

Hon. Jennifer E. Willis
United States District Court
Southern District of New York
40 Foley Square, Room 425
New York, NY 10007
WillisNYSDChambers@nysd.uscourts.gov

Re:   ***Loans on Fine Art LLC v. Ian S. Peck et al.;*** **Case 1:23-cv-04143-JHR-JW (S.D.N.Y.) – Letter Motion to Compel Production and for Contempt**

Dear Judge Willis,

This firm represents Judgment Creditor Loans on Fine Art LLC ("LoFA"). During the last hearing/status conference, the Court ordered Judgment Debtors to produce documents and revised responses to LoFA's discovery requests by October 20 at 5:00 p.m. D.E. 157.

Yesterday at 2:28 p.m.—**just two and a half hours before their production deadline**—Judgment Debtors indicated they would not comply with the Court's order absent entry of a protective order. Later, they insisted that the production be maintained "Attorneys' Eyes Only" until the Court rules on a request for a protective order. LoFA disputed any need or entitlement for a protective order, or any delay in a production.

Ultimately, Judgment Debtors produced **some** documents and somewhat updated interrogatory responses by 5:00 p.m. yesterday; however, their discovery responses remain severely deficient. The supplemental production is a direct violation of the Court's order, for which Judgment Debtors should be held in contempt and their lawyers sanctioned, as follows:

**Interrogatories**

***Same boilerplate objections.*** First, the interrogatories violate the Court's order because they restate the same boilerplate objections that the Court overruled on two separate occasions. D.E. 146; D.E. 157.

By way of example, Interrogatory #1 asks that Judgment Debtor Peck specifically identify all bank accounts (including depository accounts and credit cards, among others) that he has owned or in which he has been an authorized signatory since January 1, 2020. In response, Mr. Peck stated:

*Loans on Fine Art, LLC v. Peck, et al.*
Page 2
October 21, 2025

>Respondent incorporates his General Objections by Reference. Respondent objects to Interrogatory No. 1 as vague, ambiguous, overly broad, and unduly burdensome. Respondent also objects to this Interrogatory as it seeks information that is confidential and/or privileged and/or attorney work-product. Subject to and without waiving the foregoing objections and the General Objections, Respondent responds…[1]

As the Court already noted at the September 2, 2025 hearing, there is no way that the identification of a bank account could implicate the attorney-client privilege or the work product doctrine. The assertion of these boilerplate objections for a third time is made for an improper purpose, and Judgment Debtors' attorneys should be sanctioned for violating the Court's order. FED. R. CIV. P. 26(g)(3) (allowing Court to impose sanction on attorney that violates Rule 26(g)(1) without substantial justification).

***Incomplete and false responses.*** Peck only revised his responses to 5 of the 21 interrogatories, and his revised interrogatory responses remain incomplete and/or false. For example:

Initially, Mr. Peck responded to Interrogatory No. 1 that he only had one bank account at M&T Bank ending in 4986, with a balance of $22.02. Now, Mr. Peck amended his response to state that, in addition to the M&T Bank 4986 account, (i) he is also the signatory on a custodial account for his minor son; (ii) he had an account at Bank of America ending in 5516; and (iii) is an "alternate signatory" on a business account held by Empire Chesapeake Holdings LLC at M&T Bank, ending in 6261. Attached as **Composite Exhibit 1** are documents that LoFA has received through third-party subpoenas showing that Mr. Peck's response is incomplete and that Mr. Peck is withholding information as to his banking history and authority over accounts. For example, Peck was the only signatory on Stubbs Holdings LLC's[2] account at Flagstar Bank[3] (and the account opening records state he owns 100% of Stubbs Holdings and the only signatory on the account); and he also had a personal bank account at TD Bank that he closed in January 2025. These are not the only accounts that were not disclosed. At this stage, it is hard to believe Mr. Peck's omissions are inadvertent.

Interrogatory No. 5 asked that Peck specifically identify all sources of income during the last 5 years. Originally, Peck stated that he received distributions between 2020-2024 from partnership interests in Castle Farraday Associates and East Egg Associates of approximately $150,000 each year. Peck's supplemental responses only clarify that the specific amounts of the

---

[1] Judgment Debtors' responses are all made "subject to and without waiving" their boilerplate, already overruled, objections—which begs the question: are Judgment Debtors withholding responsive information and documents based on their boilerplate objections?

[2] Stubbs Holdings, LLC is owner of a ~$9 million home in Bridgehampton, where Mr. Peck lives, at least part of the time.

[3] The account was initially opened with Signature Bank, which was subsequently acquired by Flagstar Bank.

*Loans on Fine Art, LLC v. Peck, et al.*
Page 3
October 21, 2025

distributions from the two entities are set forth in Peck's tax returns (he only produced returns from 2021 through 2023). **Peck provided no information whatsoever about his sources of income during 2025.**

Interrogatory No. 6 requested that Peck specifically identify all his monthly living expenses. His response was not amended at all: he maintains that he "pays approximately $5,000.00 per month in personal and/or living expenses" with no breakdown of each expense as required, despite Peck owning, and living in, two properties in New York City and Bridgehampton (collectively valued between $15 - $20 million), having two children, and living in one of the most expensive cities in the United States. Not only is his response implausible, but it is also wholly incomplete.

Interrogatory No. 11 asked that Peck provide certain information about his digital assets. In both the original and supplemental responses, Peck stated that he had none. However, LoFA obtained third-party productions confirming that Peck owns, and bought and sold, digital assets through exchange Coinbase.

These are just a few examples to show that Judgment Debtors did not even attempt to comply with the Court's order. Peck took more than 10 days to make 5 small changes to his interrogatories responses, evidencing his disdain and disrespect of this Court, the judicial system, and the undersigned counsel.

**Requests for Production**

***No production from corporate judgment debtors.*** LoFA served 68 requests for production on **each** of the 6 Judgment Debtors. However, only Peck produced documents. LoFA has not received any bank statements, tax returns, or any other document from any of the corporate Judgment Debtors (e.g., ACG Arrangement Services, LLC; ACG Capital Company, LLC; Modern Art Services, LLC; Patriot Credit Company LLC; Pegasus Credit Company LLC).

***No amended response provided.*** Although Peck produced 119 pages as a supplemental production, he did not provide amended responses to the requests for production. Therefore, LoFA cannot ascertain whether there is a category of documents for which Peck has no documents, or whether any documents are being withheld on the basis of work product or attorney-client privilege. Peck must produce written responses to the requests for production in addition to the documents.

***No privilege log provided.*** The supplemental production is also deficient because it did not include a privilege log even though Peck asserts the attorney-client privilege in response to at least three interrogatories (Interrogatory Nos. 1, 20-21).

***Deficient production.*** But more importantly, Peck's production remains incomplete. Peck's supplemental production consists of 119 pages containing the following:
- A 38-page 2020 appraisal of the Manhattan Condominium, valuing the condominium at $10,700,000;

*Loans on Fine Art, LLC v. Peck, et al.*
Page 4
October 21, 2025

- *One* wire transfer request authorization form from Bank of America;
- Peck's individual **unsigned** federal and state income tax returns for 2021, 2022, and 2023;
- *One* account statement from M&T Bank from April 2024.

However, Judgment Debtors have **not produced** (among other items):
- A complete set of bank statements and credit card statements for all Judgment Debtors, even though the Court noted that Peck should be able to easily log into his bank accounts to obtain all statements, or bank statements for accounts in which Peck is a signatory[4];
- The partnership agreements for Castle Farraday Associates and East Egg Associates, from which Peck claims he received his only income from 2020-2024;
- Documents showing the account in which Peck's income from Castle Farraday Associates and East Egg Associates was deposited;
- Any trust or other documents concerning The 2004 Ian Peck Descendant's Trust, which has been the source of significant monies paid to Peck or for his benefit, and which has a UCC-1 secured interest in certain assets of Peck;
- Income tax returns for all corporate Judgment Debtors; or
- Evidence of Peck's 2024 and 2025 income;

In addition, what LoFA wrote in its October 3, 2025 letter to the Court remains true after the supplemental production: Judgment Debtors failed to produce documents relating to (i) transfers to Peck's ex-wife and sons, (ii) **transfers made by Judgment Debtors (or on their behalf) to any attorneys**, (iii) gifts made by Judgment Debtors[5], (iv) the ownership of Empire Chesapeake Holdings LLC (an active business that Peck controls and which appears to pay Peck's personal expenses), (v) non-profit organizations or foundations in which Judgment Debtors have an interest; (vi) the transfer of Peck's membership interest in Beta Leo Investments LLC; or (vii) Peck's relationship with Manuel Escobar, who is the regular recipient of funds from Judgment Debtors—even though these documents are material to LoFA's investigation of fraudulent transfer, alter ego, and piercing the corporate veil claims in aid of execution.

---

[4] For example, as part of 2025 lawsuit where Empire Chesapeake and Peck were sued for filing an improper UCC-1 lien, Peck swore that he was the "director of Art Capital Group, LLC" and the "director of Empire Chesapeake Holdings, LLC." And that Art Capital Group, LLC "is the longest standing independent source for non-traditional asset-based lending, specializing in securing financing through fine art collectibles. Empire arranges the transactions for ACG." *Libbie Mugrabi et al v. Empire Chesapeake Holdings, LLC et al*, Index No. 650794/2025 (Sup. Ct. N.Y. County 2025), at D.E. 5. It would stand to reason that these entities would have active bank accounts and that Peck is a signatory on those accounts. Those bank statements must be produced.

[5] As one example, the 2023 tax return of Peck states that he gifted $21,626 in 2023. Otherwise, no documents or information has been provided reflecting this payment(s), where it was made from, or to whom it was given.

*Loans on Fine Art, LLC v. Peck, et al.*
Page 5
October 21, 2025

**<u>Relief Requested</u>**

Without an adequate document production and discovery responses from Judgment Debtors, LoFA will be unable to effectively depose Peck on October 30. Accordingly, LoFA requests that the Court compel Judgment Debtors to provide a complete production and discovery responses within 3 days of the Court's order. Moreover, LoFA requests that it be allowed to proceed with the deposition on October 30 and that the Court compel Peck to appear for a second deposition within 30 days of fully complying with LoFA's discovery requests.

Further, LoFA requests that the Court hold Judgment Debtors in contempt for failing to comply with its October 10, 2025 order. The Court ordered Judgment Debtors to produce a full set of bank account statements (at a minimum) and to address the deficiencies in the discovery responses as discussed at the October 10 hearing. Judgment Debtors ignored the Court's order and made no meaningful attempt to make a complete production. The supplemental production contains a single monthly bank account statement from M&T and fails to include a single statement from Peck's TD Bank account and other bank accounts from which he currently pays all his daily expenses, or from which he withdraws the cash he swears he uses to pay his monthly expenses. Thus, the Court should fine Judgment Debtors $600 ($100 per Judgment Debtor), at a minimum, each day until they purge their contempt.

In addition, LoFA respectfully requests that the Court impose additional sanctions on Matthew Press and Ethan Kobre. Rule 26(g) of the Federal Rules of Civil Procedure states that an attorney that signs a discovery response or objection certifies that the response or objection is not interposed for an improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. FED. R. CIV. P. 26(g)(1). The rule allows the Court to impose sanctions, including an order to pay reasonable expenses and attorney's fees, when the attorney's certification violates the rule without substantial justification. FED. R. CIV. P. 26(g)(3).

There is no justification for opposing counsel's discovery responses. They are asserting boilerplate objections that were twice overruled for a **third time** and have failed to make substantive changes to the interrogatory responses, requiring LoFA to litigate the same issues the parties litigated at the October 10 conference. Their conduct has caused LoFA—and this Court—to waste significant time and resources. The Court should put a stop to this charade.

Sincerely,

*/s/ Cristina Vicens Beard*
M. Zachary Bluestone
Cristina Vicens Beard

*Counsel to Judgment Creditor*
*Loans on Fine Art LLC*

Cc:   All Counsel of Record